In the Matter of WILLIAM SHERMAN et al., Respondents, against JAMES W. HIGGINS, as Commissioner of Police of the City of Buffalo, Appellant, Impleaded with Others.

(Argued November 17, 1936; decided December 31, 1936.)

287

*Gregory U. Harmon, Corporation Counsel* (*Andrew P. Ronan* of counsel), for appellant.

*Gilbert J. Pedersen* and *Gordon M. Chambers* for respondents.

FINCH, J. The petitioners were variously laborers, porters, janitors or mechanics' helpers in the police department of the city of Buffalo. In April and May, 1934, they were dismissed without the filing of written charges and a hearing thereon. In August, 1935, they instituted this proceeding for reinstatement.

At Special Term an alternative order of mandamus was granted and the payment of back pay directed from the time of their dismissal. In the Appellate Division the order was modified, the mandamus made peremptory and the back pay limited to the period after May 6th, 1935, when the Civil Service Law (Cons. Laws, ch. 7) was

amended so as to provide for the payment of back salary in the event of wrongful dismissal (Civil Service Law, § 23).

The positions involved are all in the non-competitive class of the classified civil service of the city of Buffalo.

The history of the enactment of the various legislative acts reveals clearly the legislative intent to permit the dismissal of employees in the police department who are in the non-competitive classes without the necessity of filing written charges and having a hearing thereon.

We start with the charter of the city of Buffalo (L. 1914, ch 217, as amd.) and the amendment thereto in 1920. This specifically provides that not only members of the police force but "clerks and employees" should not be dismissed except upon written charges (§ 251 of old charter, as amended by L. 1920, ch. 172).

In 1925, pursuant to the City Home Rule Law (Cons. Laws, ch. 76), the Common Council of Buffalo provided by local law that no employee of the city of Buffalo, in the classified civil service subject to competitive or *qualifying* examination, should be removed except upon written charges (Local Law No. 6 of 1925). As these petitioners were employees of the city of Buffalo and had taken qualifying examinations, they could not be removed except upon written charges at that time.

A new charter for the city of Buffalo went into effect January 1st, 1928 (Local Law No. 4, 1927; published in Local Laws, 1932, p. 21). This repealed both section 251 of the old charter and Local Law No. 6 and enacted in place thereof sections 443, 444 and 445, which are as follows:

" § 443. Removal of mayor, comptroller and president of the council. The mayor, comptroller and the president of the council may each be removed from office by the governor in the same manner as sheriffs are removable under the constitution of the state.

" § 444. Removal of employees. No employee of the city holding a position in the classified civil service subject to *competitive or qualifying examination,* shall be

removed from such position, except for incompetency, misconduct or insubordination shown after hearing, upon written charges and the burden of proof shall be upon the accuser. The trial of the charges shall be had before a board consisting of the mayor, the comptroller and the president of the council. A copy of the charges shall be served upon the accused employee, who shall be accorded a reasonable time in which to prepare for the hearing and who shall be entitled to be heard in person and by counsel and to furnish evidence in his behalf. * * * Nothing herein contained shall be deemed to apply to any employee who has been separated from the service through the abolition in good faith of his position by the appointing power.

" § 445. Removal of policemen and firemen. No member of the police or fire department, other than the head of either department, shall be removed, reduced in rank, suspended, fined or otherwise punished or disciplined except upon charges as provided in sections four hundred forty-six to four hundred fifty inclusive, and such sections shall apply only to members of the police and fire departments."

The intent of the above sections, 443, 444 and 445, seems clear. First, provision is made under section 443 for the removal of the Mayor, the Comptroller and the President of the Council. Next, in section 444, provision is made for the removal of all employees. Finally, in section 445, provision is made for the removal of firemen and policemen. Therefore, provision is made for the removal of all employees of the city except those in the exempt and labor classes who could, of course, be removed summarily.

Under section 444 the petitioners, as employees of the city, since they had taken a qualifying examination, were specifically protected from summary removal. By the express language of section 444 all the employees of

the city in the classified civil service, whether in the competitive or non-competitive class, could only be removed after the filing of written charges and a hearing thereon. Such was the state of the law when on July 8th, 1930, another local law was enacted which amended section 444 (Local Law No. 2 of 1930, p. 21). This local law amending section 444 provided that " no employee of the city holding a position in the classified civil service subject to *competitive* examination shall be removed " except upon the filing of written charges and a hearing thereon. By this amendment the protection of this section was continued with respect to those in the classified civil service, subject to *competitive examination,* but was removed from those subject to *qualifying examination.* In the latter class, as already noted, were the petitioners. Admittedly the petitioners, employees in the police department, came within the ·language used in section 444. Petitioners argue that although they. are not entitled to the filing of written charges and a hearing thereon under section 444, they are so protected under section 445, which is entitled, " Removal of policemen and firemen." Clearly petitioners are neither policemen nor firemen, but laborers, porters, janitors or mechanics in the police department. Hence this section at least in the title does not apply to them. Petitioners claim, however, that the wording of the body of section 445 refers to a member of the police department and hence is sufficiently broad to cover the petitioners. There are two answers to this contention: *First,* the title of the section indicates the scope rather than ambiguous phraseology in the body of the section. *Second,* the phrase " members of the department " may mean only members of the uniformed force or may be used to include all the employees of the department as is shown by the use of this phrase in sections 462 and 477 of the charter, which read as follows:

" § 462. Membership of the police pension fund. All present and future members of the police force, and

all employees of the police department now entitled to participate in the benefits of the police pension fund, shall be members of the police pension fund.

"§ 477. Membership of firemen's pension fund. All present and future members of the fire department and all employees as distinguished from members of the fire department now, entitled to participate in the benefits of the firemen's relief and pension fund, shall be members of the firemen's pension fund."

A reading of these sections shows an intention to make a distinction between a member of the police or fire department as distinguished from an employee thereof. Hence, when section 445 was entitled — Removal of policemen and firemen — and then followed the words "No member of the police or fire department * * *" a fair reading would apply this section solely to the members of the uniformed force.

The Police Commissioner further contends that his construction has been the practical construction put upon the charter since the adoption of Local Law No. 2. In answer petitioners point to a rule of the police department (Section 355 of Rules and Regulations providing that the trial of a member or employee of the department shall be on charges and specifications) which apparently was not changed after the adoption of Local Law No. 2 of 1930. In any event a rule of the department may not override a legislative enactment.

Since the petitioners were not entitled to a hearing upon written charges, the act of the Police Commissioner in removing them for the good of the service was entirely within his right. (*Matter of Merriweather* v. *Roberts*, 268 N. Y. 12.)

It follows that the order of the Appellate Division and that of the Special Term should be reversed and the motion denied, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Orders reversed, etc.